# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF GEORGIA
# SAVANNAH DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v.  ) | CR420-010 |
| ) | |
| KELVIN TYRONE WILLIAMS, ) | |
| ) | |
| Defendant.  ) | |

## REPORT AND RECOMMENDATION

Kelvin Williams is indicted on one count of possession of a firearm and one count of possession of ammunition by a prohibited person, in violation of 18 U.S.C. § 922(g)(1).  *See* doc. 1 (Indictment).  He has moved to suppress evidence discovered in a search of his car and a search of his home.  Doc. 31.  The Government opposes.  Doc. 36.  Because Williams' motion alleges facts inconsistent with his assertion that those searches violated the Fourth Amendment, his motion should be **DENIED**.[1]  A hearing is not necessary.[2]

---

[1] In reaching its conclusion, the Court has largely ignored the Government's response. It has not done so because that response is inadequate or mistaken.  The question prior to a hearing, however, is not the strength of the Government's arguments and evidence but the sufficiency of defendant's allegations.  *See* n 2, *infra*.

[2] The Eleventh Circuit requires that motions to suppress "must in every critical respect be sufficiently definite, specific, detailed, and nonconjectural to enable the court to conclude that a substantial claim is presented." *United States v. Richardson*,

According to Williams, a warrant was issued for his arrest by a Chatham County, Georgia judge on June 8, 2019. Doc. 31 at 1. Early the next morning, officers of the Port Wentworth Georgia Police Department observed his vehicle, a Dodge Charger, and initiated a traffic stop. *Id.* at 2. Significantly, as discussed below, he concedes that officers ran the vehicle's tag *before* the stop, and it "came back as registered to Elisa Baker and Kelvin Williams."[3] *Id.* at 3. He was arrested pursuant to the warrant. *Id.* The vehicle was impounded and a warrant was obtained to search its contents. *Id.* That search revealed two .22 caliber bullets and "a piece of a B[e]retta gun handle." *Id.* Based, at least in part, on that evidence, officers obtained a search warrant for Williams' residence. *Id.* That search produced a revolver from Williams' nightstand. *Id.*

---

764 F.2d 1514, 1527 (11th Cir. 1985) (citation omitted). "In short, the motion must allege facts which, if proven, would provide a basis for relief[,]" and has discretion as to whether a hearing is necessary. *Id.*

[3] The Government's response provides a more detailed factual recitation. *See* doc. 36 at 3–5. There appears to be no dispute as to the relevant facts, however. The Government's presentation makes clear that (1) a warrant was issued for Williams' arrest sometime in the evening of June 8, 2019, doc. 36 at 2–3; (2) Officer Wilson, the officer who initially observed the Charger, was aware of the arrest warrant, *id.* at 4; (3) Wilson observed a vehicle he suspected to be Williams' and confirmed the registration, *id.* at 4; (4) the information was communicated to Savannah Police, including Officer Michael Gonzales, who initiated the stop, *id.* at 4–5.

Williams' argument for suppression of the evidence depends upon his contention that the original traffic stop violated the Fourth Amendment. *See* doc. 31 at 3–4. He contends, "[b]ecause no basis existed for the officers to have reasonable suspicion that Mr. Williams was in the vehicle nor did the officers observe any traffic violations, the stop . . . was illegal . . . ." *Id.* at 4. Because that initial stop was illegal, the subsequent search of the vehicle was tainted, and further evidence discovered in that tainted search was used in securing the warrant for his home. *Id.* All the evidence discovered in the search of the car and his home should be suppressed, he contends, as fruit of the poisonous tree. *Id.* Williams' argument must fail, regardless of any argument or evidence the Government might present, because his own allegations belie his premise that "no basis existed for the officers to have reasonable suspicion that Mr. Williams was in the vehicle."

Williams' motion depends entirely[4] upon whether the initial stop of his vehicle was illegal. The Eleventh Circuit has explained that "a traffic

---

[4] The Court does not discount the possibility, raised by the Government's submission, that there are additional reasons, other than the one discussed below, why Williams' motion fails. Those arguments are moot, however, given the fact that Williams' own allegations establish a sufficient factual basis for reasonable suspicion.

stop is a constitutional detention if it is justified by reasonable suspicion under *Terry* [*v. Ohio*] or probable cause to believe a traffic violation has occurred under *Whren v. United States*, [cit.]." *United States v. Chanthasouxat*, 342 F.3d 1271, 1275 (11th Cir. 2003). Furthermore, "[r]easonable suspicion is determined from the totality of the circumstances and collective knowledge of the officers." *United States v. Nunez*, 455 F.3d 1223, 1226 (11th Cir. 2006). The Court assumes, for purposes of this analysis, that Williams is correct that officers lacked any probable cause to believe a traffic violation occurred. *See* doc. 31 at 3. The validity of the stop, then, depends upon whether officers had, at least, reasonable suspicion.

"Reasonable suspicion requires that officers possess a 'minimal level of objective justification for making the stop.'" *United States v. Mosby*, 2015 WL 128189, at *3 (S.D. Ga. Jan. 8, 2015) (quoting *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000)). "'[R]easonable suspicion' is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence," but more than an "inchoate and unparticularized suspicion or 'hunch' of criminal activity." *Wardlow*, 528 U.S. at 123–24 (internal quotations and citations omitted). Courts have

4

routinely recognized that an officer's reasonable belief that an individual is subject to an arrest warrant provides reasonable suspicion for such a stop. *See, e.g., United States v. Provens*, 2009 WL 10695199, at *3 (N.D. Ala. June 25, 2009) ("Little authority is required to support the conclusion that police may conduct a traffic stop for the purpose of executing an arrest warrant for someone in the car."). The question, as Williams recognizes, is whether officers could have reasonably believed that he was in the car.

The Supreme Court has recently resolved precisely the question upon which Williams' motion depends. In *Kansas v. Glover*, the Supreme Court recognized that an officer's inference that the registered owner of a vehicle was driving it, in the absence of any evidence to the contrary, was perfectly reasonable. ___ U.S. ___, 140 S. Ct. 1183, 1186 (2020) ("We hold that when the officer [conducting a traffic stop] lacks information negating an inference that the owner is the driver of the vehicle, the stop is reasonable."). In its opinion, the Court expressly rejected the Kansas Supreme Court's determination that it was unreasonable to infer, from registration information, that the registered owner was likely to be the driver. *See id.* at 1188 (registration information, fact that the vehicle observed matched the registration, and information concerning the

5

registered owner's revoked license, "provided *more than reasonable suspicion* to initiate the stop." (emphasis added)).[5] As Justice Kagan succinctly states in her concurrence, "[w]hen you see a car coming down the street, *your common sense tells you that the registered owner may well be behind the wheel.*" *Id.* at 1191(emphasis added) (Kagan, J., concurring).

Williams concedes that officers[6] stopped his vehicle "[a]fter running the tag number," and determining it was "registered to Elisa Baker and Kelvin Williams." Doc. 31 at 3. Williams cannot plausibly claim, given that he was in fact driving, that those officers had some information negating the inference that he was driving. Given the Supreme Court's analysis in *Glover*, then, Williams' contention that "no basis existed for the officers to have reasonable suspicion that Mr. Williams was in the vehicle," doc. 31 at 3, simply defies common sense. Once the officers

---

[5] Arguably, the facts here provide more support for the officers' inference than the facts in *Glover*. The Court's opinion discusses, and rejects, Glover's argument that the fact that his license was suspended weakened the inference that he was driving the vehicle registered to him. *See Glover*, 140 S.Ct. at 1188–89. There is nothing in the facts alleged here to suggest *any* information mitigating the inference that the registered owner of the vehicle was its driver.

[6] Again, the Government's presentation of the facts, though consistent with Williams', serves to emphasize the stop's legitimacy. In particular, the Government's brief points out, with citations to the record, the specific communications among law enforcement officers supporting the "collective knowledge" of the facts supporting reasonable suspicion or probable cause. *See* doc. 36 at 3–5.

reasonably inferred from the registration information that an individual who they had a warrant to arrest was (or even might be) driving the vehicle, they clearly had reasonable suspicion, if not probable cause, to conduct the stop. *See, e.g., Provens*, 2009 WL 10695199, at *3 ("At the very least, the admitted existence of the . . . arrest warrant provided the . . . police with reasonable suspicion to make the traffic stop for investigative purposes.").

Given that the facts alleged in Williams' motion establish that police had reasonable suspicion to stop the Charger, his motion has failed to establish his entitlement to a hearing. *Richardson*, 764 F.2d at 1527. In summary, he alleges that: (1) a warrant was issued for his arrest, doc. 31 at 1; (2) officers knew of the existence of that warrant, *id.* at 1–2; (3) officers knew before initiating the stop that Williams was a registered owner of the Charger, *id.* at 3.  Those facts and the common-sense inferences they support establish the officers had reasonable suspicion, at least, to stop the Charger. Since the initial stop was valid, any reliance on the resulting evidence does not impugn the validity of the subsequent warrants; there was simply no poison in the tree to taint its fruit. Williams' suppression motion, therefore, should be **DENIED**. Doc. 31.

This Report and Recommendation (R&R) is submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 72.3.  Within 14 days of service, any party may file written objections to the R&R with the Court and serve a copy on all parties.  The document should be captioned "Objections to Magistrate Judge's Report and Recommendations."  Any request for additional time to file objections should be filed with the Clerk for consideration by the assigned district judge.

After the objections period has ended, the Clerk shall submit this R&R together with any objections to the assigned district judge.  The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C).  The parties are advised that failure to timely file objections will result in the waiver of rights on appeal.  11th Cir. R. 3-1; *see Symonette v. V.A. Leasing Corp.*, 648 F. App'x 787, 790 (11th Cir. 2016); *Mitchell v. United States*, 612 F. App'x 542, 545 (11th Cir. 2015).

**SO REPORTED AND RECOMMENDED,** this 3rd day of August, 2020.

*/s/ Christopher L. Ray*
Christopher L. Ray
United States Magistrate Judge
Southern District of Georgia